Good morning, counsel. Our next case for today is case number 415-0667, People of the State of Illinois v. James Cummings, and for the appellant we have Mr. Wilson. For the appellee we have Ms. McClain. And there was filed by the state appellate prosecutor a motion to strike, and there was not a response filed. The intention of the court was to take that with the case, and if there is argument on that or anything you want to say on that, please do so this morning during your argument. And you can let us know your position as well if you want to do that. You may proceed, counsel. James Cummings May it please the court, counsel. Good morning, your honors. I represent James Cummings on behalf of the Office of the State Appellate Defender. As to the motion to strike that was just mentioned, I did yesterday send a copy of a response to the clerk's office. As of this morning, I had not received a file stamp copy back yet. I had supplied a courtesy copy to opposing counsel yesterday afternoon. Of course, that was the unfiled copy, and I do have courtesy copies of my response for the court. Would you hand those up, counsel, please? Thank you. And you did receive a courtesy copy, counsel? Alright. Thank you very much. Would you like a moment to review that, or would you like me to proceed? No, you may proceed. Okay, thank you, your honor. James Cummings was convicted of manufactured delivering between 1 and 15 grams of a controlled substance. He's argued that the state has failed to meet its burden beyond a reasonable doubt in this case to show that he constructively possessed that substance and that he intended to deliver that substance. And the main thrust of his argument is that there are substantial gaps in the state's case. For example, Laurendis Wright lived in the home that the police raided on the day that James was arrested. Laurendis told the police at the time that he was arrested with James and at the time of James's trial that all of the contraband in his house was his, was Laurendis's. None of James's fingerprints were found on any of the drug paraphernalia, not on the Pyrex dish, not on the scale, not on the table where drugs were found in Laurendis's home. And the police were unable to definitively establish that James, in fact, was staying at Laurendis's house. There was some testimony that there was a fresh bag of clothes in a closet in Laurendis's home, but the state didn't introduce any evidence establishing that that bag was linked to James in any way. They didn't, for example, introduce any fingerprint evidence or any evidence that there were personal items in that bag that could be definitively linked to James. Similarly, there were no phone logs showing that James and Orville, the person who allegedly drove to Laurendis's house to purchase drugs, had communicated in any way in the days and the weeks leading up to James's arrest. Crucially, the state also failed to ask Orville what weight of drugs he intended to purchase when he went to Laurendis's house. So, as I said, there are substantial gaps in the evidence here demonstrating that the state failed to meet its burden to show that James constructively possessed these drugs and that he, in fact, intended to deliver them. It wasn't his house Laurendis is taking credit for all of the drugs. If this court were to disagree with the main thrust of the reasonable doubt argument, there's also a second reasonable doubt argument in the briefs. And that is that if this court finds that James was guilty of constructively possessing the drugs and intending to deliver the drugs, his conviction should be reduced to the Class II offense of manufactured delivery of less than 1 gram of a controlled substance. And that is mainly because no state witness testified that Orville planned to purchase more than 1 gram or more of a controlled substance. Are they required to show that? In order to meet its burden here, if you're going to charge a defendant with manufactured delivery of 1 to 15 grams of a controlled substance, there should be some evidence that, in fact, he intended to deliver between 1 and 15 grams of a controlled substance. Well, what about the evidence as it relates to the amount of the substance located on the premises? Sure. That, the amount of the substance, Officer Lehrer testified that the amount of the substance was indicative of an intent to deliver. But we have to remember, this wasn't found in James's residence. There's no evidence that James had the intent to exercise his dominion and control over any of the drugs except potentially the amount that Orville testified to if this court finds that Orville's testimony was persuasive. Okay, but what I'm getting at as far as when I say the amount, the amount that was recovered, isn't it logical, isn't there an inference that if you are selling drugs and you have a certain amount found in your home, you intend to sell that amount? It might be a logical inference if it's in your home. It's not in James's. In a home where you are. Well, I guess if I am intending to sell a certain amount of drugs and I am at a friend's house and the friend has a lot more drugs than what I do, I don't know how it can be inferred that I am planning on exercising my dominion and control over the drugs that my friend has. And that's exactly the situation that we're presented with here. And, of course, we know we have the concept of joint possession. Correct. But in order to show the joint possession, you have to show that James was equally able to exert control over the premises. Over the premises or the drugs? Well, one factor in the constructive possession is that he has the knowledge of the presence of drugs and he exercises immediate and exclusive control over the area where the drugs were found. Right. So you don't need to show that he owns the premises that is his house or anything like that. Correct. Yeah, I completely agree with that. But you still have to show that he has immediate and exclusive control over the area and where there's no definitive evidence that he's staying in that house. There's no definitive evidence that the drugs are his. His fingerprints aren't found on any of the material. And, again, you have Laurandus Wright who's saying everything is mine. None of this is Mr. Cummings's. So there is certainly a question regarding whether he intended to exercise control over the full amount of the controlled substance that was found on the table in Laurandus's home. But I should say even if the court finds that there was sufficient evidence in this case to meet the state's burden, we also have the additional layer of Ronald Kessinger's ineffectiveness. And if the reasonable doubt argument that was in the brief shows anything, it's that the evidence in this case was not clear cut. There's conflicting evidence. There's not definitive evidence that James, in fact, was going to exercise control over all of these drugs. And the errors that counsel committed here are sufficient to justify reversal in what is a very close case. Specifically, we really have two parties in this case. We have James and we have Orville. Those are kind of the two characters of the story. As I went over during the introduction in my argument, James didn't live at this place. His fingerprints weren't found at it.  And then you have Orville, someone who admits that he withdrew money, drove to Laurandus's house with the intent to purchase drugs. Of these two characters in the story, James was the one that was charged. Orville was not. The jury was never told that Orville wasn't charged with a criminal offense here. The jury was told Orville was taken into custody, that he was taken to the police department, that he was Mirandized, that he was questioned. But counsel never tells the jury that the main witness, the linchpin of the state's entire case, the one who can place, arguably, can place the drugs in James' hands, was an unreliable witness because he may not have wanted to be charged by the state and may have wanted to give favorable testimony to ensure that he wasn't going to be charged in this case. And so you believe the impact of bringing out that information would have been greater than the jury knowing that this guy is obviously a drug user and trying to purchase drugs and you wouldn't have any concern that they may determine that he was not charged for a legitimate reason? Well, I don't know what the legitimate reason could have been that he wasn't charged, just given the sheer facts of this case. But certainly, the fact that he was a drug user and all the factors that you mentioned, that's something in addition that the jury could have considered. But when you're talking about witness bias, juries take that into account. If a witness has a reason to offer unfavorable testimony against a defendant, defense counsel has an obligation to seek that information out and present it to the jury. In the brief I cite to the Moore case that says, the constitutional guarantee of effective assistance of counsel contemplates that counsel will engage evidentiary rules to shield his client from a decision based on unreliable evidence. And if there is some kind of evidence that is unreliable, it's the testimony of a biased witness. And the jury was never told that they should scrutinize this testimony given by Orville because he had a bias. Additionally, Kessinger's ineffectiveness regarding Orville goes a step further. Because during his testimony, Orville stated that James had sold him drugs in the past. Defense counsel didn't object to this evidence. Defense counsel didn't seek a limiting instruction with this evidence. And as we know, juries consider propensity evidence to be some of the strongest evidence against a defendant. That propensity evidence is generally barred, not because it's improper, but because it's too probative. Juries place too much weight on that evidence. Defense counsel did nothing to see that that evidence was limited, for example, to a way of establishing the way that the two men knew each other and not for criminal propensity. Counsel did nothing regarding limiting that crucial evidence. And then we have another evidentiary problem as a result of Mr. Kessinger's representation. While testifying about why he believed the drugs in the residence were meant to be delivered, Officer Lehrer told the jury that he based his conclusion on the fact that the officers making contact with the two subjects out in the alley, that's Orville and Luann Worrell, they stated they were there to buy cocaine from Mr. Cummings. Up to that point, the jury hadn't learned that Luann had in any way implicated herself as someone that was going to go and buy drugs from Mr. Cummings. Again, defense counsel didn't seek a limiting instruction. Now, don't get me wrong, Lehrer's testimony as to Luann's statement was admissible insofar as it provided a basis for Lehrer's testimony, for his conclusion that the drugs were meant to be delivered. But that doesn't mean that the defense counsel couldn't have limited that testimony so the jury didn't know that as a result of counsel's failure, the jury didn't know that it couldn't consider this hearsay evidence that Luann told to the officers as substantive evidence of James' guilt. Defense counsel failed to limit this evidence as well. So, stepping back from this for a second, we have an incredibly close case where there are numerous holes with the evidence that the state presented. No call logs establishing that a drug deal had been set up. The evidence is inconclusive on whether James was residing at Lorenzis' home. We have Lorenzis who takes credit for all this stuff. And then we have defense counsel that lets in three evidentiary matters that would carry great weight with the jury, and all of those matters should have been limited or objected to in some way, and defense counsel didn't do that. And then we have the additional problem of the jury instruction. There potentially was no more crucial jury instruction in this case than the definition of the word possession. During its deliberations, the jury sent out a question saying, we would like a verbal description of this, a more detailed explanation. And in my brief, my initial brief, I set out that a trial court has a duty to provide an answer when a jury poses an explicit question or requests clarification on a point of law. The court must discharge this duty, even if it has already given the jury proper instructions regarding the law. Where the jury makes difficulties explicit, the judge should clear them away with concrete accuracy. And where the question asked is not clear, it is the duty of the court to seek clarification. So in this closely balanced case, where we have multiple examples of defense counsel allowing an improper evidence, we have the jury coming to the court during its deliberations with arguably the most crucial jury instruction and telling the court, we've got a question about this. Could you give us a more detailed explanation? And the court just says, rely on the instructions you have. They didn't ask for a more detailed explanation. They said, we would like a verbal description of this more detailed explanation. The way that... What more would you anticipate the court to say other than to reread the possession instruction? Part of the problem is we don't know. We don't know what the jury was struggling with here. The court, when the jury expresses a question or seeks clarification, the judge has an obligation to try and alleviate that. And part of that is going to the jury and saying, could you please explain what you are having difficulty with here? Or telling the jury, please read the instruction. And that's possible. The problem with that, though, is you then have the possibility that the jury, who has already told the court that it's struggling with this instruction, goes back and feels kind of dejected that, no, we're not going to get an answer to this. So I guess we just throw our hands up and... That would be the case in every jury question. It would be the case in every jury question where the judge didn't rightly respond to the jury question. Well, we see lots of cases where the issue is the jury was asked a question. And the judge says, you've heard the evidence. You've been properly instructed. Please focus on the instruction. You know, you have a question about it. Right. Well, and the issue here is, and the way that I read the note that was in the record, and the way my recollection, and I could be mistaken, I haven't seen the record in several months now, was that it was a two-line question. The first line is, we would like a verbal description of this. And then the second line was a more detailed explanation. It's that more detailed explanation part that I think really concerns me. Because you have a jury that's saying, essentially, we've read this. Again, this very important jury instruction. We would like a more detailed explanation of this. And so what if the court determines that I can't do any better than the definition provided by the instructions, and this is going to lead to more confusion, conversation between the jury and myself, and we don't want to go there. And so the court is of the opinion they need to re-read the possession instruction and go with that, which is a really good instruction. It's pretty clear. There was something you said at the first part, and I'm trying to remember what it is. Part of the problem that I have with this case is, you said something about the court thinking, that it couldn't do a better job than what the instruction already did. Right, and it might lead to more confusion for the jury and require the court to engage in an extensive conversation with the jury. Sure. The issue I have with that position is, the judge in the first place didn't find out what the confusion was here. For example, if the judge had gone and said, jury, what is your confusion? And the jury said, we're not sure how to construe this language. Well, the judge may say, I don't know what that means. I'm not going to bother the jury again, so I'm going to instruct you to go ahead and continue deliberation with this jury instruction. Let's assume that the judge asked that question. Uh-huh. What's he supposed to do then, he or she supposed to do then? Because every word he or she utters that is different than this Supreme Court-approved instruction is going to be argued by you as having been something which then either misled the jury or misinformed the jury or misinstructed the jury. So what is an experienced trial court supposed to do when it's obvious they just need to read the possession instruction again? Well, I can read it again. That's not going to change anything. Maybe it sounds better if I say it as opposed to the jurors saying it themselves, but otherwise it's really not going to have any substantive effect. Or I can tell them, you just need to read the instructions. Because as soon as I start trying to explain that instruction, isn't the trial court then walking down a road it really doesn't want to go down? It's not when... So let me back up a minute. What I am not arguing is that when the judge gets this question or this concern from the jury, that he is to start throwing different non-IPIs at the jury, hoping that one of them sticks and one of them answers the jury's concerns. What I am arguing is when he hears the jury say, especially an instruction like this, that is an incredibly important jury instruction in this case, when he hears the jury say, we need a more detailed explanation of this instruction, the first step is find out what they are confused about. Why do you need a more detailed explanation? And then as to your question about, well, am I going to come in and argue that the court was wrong with the explanation it gives, the court then gets the parties together, gets the state and the defense and the court and say, we have confusion here. Because I have asked the jury what the confusion is about, I know how to respond to this question. Or because I know what the confusion is about, can we get our heads together and find a non-IPI that addresses it? And I would note, as to what they should do, Illinois Supreme Court Rule 451 allows for the submission of a non-IPI that is non-argumentative and clearly states a law and that sort of thing. That is what I would say the court should have done in the instant case, but the court didn't. See, I am not so prepared to accept your representation that the court didn't know what the jury was asking or didn't know what they were confused about. I mean, when they say we need further clarification and the judge reaches the conclusion that this is what possession means, what I instructed you what possession means, I don't understand what else the judge is to do other than to refer them to read that instruction again. And I guess to that issue, I would go back to the People v. Harmon case that I cited in the briefs that I read earlier, which says when a question asked is not clear, it's the duty of the court to seek the clarification. Right, and I'm not agreeing that it was not clear, I guess, is my statement, is what I'm getting at. Very briefly, could I address the motion to strike before my time expires? Sure, yes. Throughout my brief, I argue that the court committed error by not properly responding to the jury instruction. It, in fact, is a premise of the entirety of my ineffective assistance of counsel argument because I can't really argue counsel was ineffective for failing to object to something the court did correctly. A major premise of my argument is that the court committed error here by not properly responding to the jury question. In reply, I raise a plain error argument. The state has argued that I can't do that in a reply brief. And in my response, I've cited a precedent that says I'm able to do that. I've also cited two multiple instances throughout the brief where I've cited my complaint that the court committed error by not properly responding to the jury question. I see my time has expired. May I just have one? You may finish your sentence. Okay. I would argue the same thing. I would stand on my response as to the mention of due process that I had in my reply brief. It was also just in response to the state's argument that it raised in its brief. Thank you, counsel. Thank you. I don't have time. One rebuttal, if you so desire. Thank you. Ms. McClain. May it please the court, counsel? First, as to the motion to strike, counsel for the state is disagreeing with my opponent. In the initial brief in Part 2A, he argued that defense counsel was incompetent. He did not argue that the court had erred. He's adding that argument in his reply brief that the court had erred. I'm not having a problem with the plain error part. I'm having a problem with the court erred argument added into the reply brief. Also, Issue 3, in his reply brief, in the initial brief, he argued statutory construction. And he adds due process into the reply brief. So that's an additional argument the state did not get to respond to. And so that's why we're asking the court to strike. First, on the issues, the state maintains that this is not a closed case. There was sufficient evidence that the defendant constructively possessed the drugs found on the kitchen table. Counsel, and I need to address this with opposing counsel. Maybe I'll get a chance on rebuttal. Can you talk a little bit about the layout? It was a little confusing to me when you talk about you come in and there's a kitchen area and a door to a basement. I'm a little confused on that. And I know that there was a diagram, but it really wasn't that helpful. Can you talk about that at all, this layout and where people were when the police came in and all of that? I believe the testimony is that when the officers entered. Did they enter off an alley? Yeah, I believe it's like a, I think the entrance to the apartment is off an alley and it's like in the back part of the building. Okay. So I think that it's kind of a different type of apartment. But the testimony is all in agreement. Even co-defendant testifies that the drugs were in. He didn't testify to drugs, but the table was in a kitchen area. Everybody is talking about a kitchen area. Right. So I don't, I think that my opponent construes it as another room. It's not another room. So when we have this testimony about someone running to the rear of the residence, is that still within the kitchen area? I'm not quite positive on that. Okay. I do know that when they enter, there are two men in the kitchen area and that's where the drugs are. So my argument is they're in plain view and that's, so he had knowledge of the drugs. So you're saying Mr. Cummings was in the area of the drugs at the time that the police entered? Yes. So they're in plain view. Okay. Knowledge can be inferred when contraband is in plain view of the defendant. In addition, defendant's phone is next to the crack cocaine on the table. When the number for Jilla, defendant's street name, was dialed on Orville's phone, the phone, which had been on the kitchen table, next to the crack cocaine, rang. That's defendant's phone. So that we can infer that he had knowledge of the drugs because his phone is right next to him. In addition, defendant had knowledge of the drugs where Orville Sullivan testified that he was going to this residence to buy drugs from defendant. We can infer that defendant had knowledge of the presence of the drugs from Orville's testimony. Co-defendant also thought that the cocaine was in powder form, but it was in rock form, so we can infer that defendant cooked it. Therefore, he knew about it. As for control, we can also infer that since defendant's phone was next to the drugs on the kitchen table, that he had control over the drugs that were next to his phone. Also, Sullivan testified he was going to the residence to buy drugs from defendant. Sullivan did not testify he was going to buy drugs from co-defendant. We can infer that defendant had control over the drugs. Orville also testified that he had purchased drugs from defendant before at this residence. We can infer from that that defendant had control over the drugs on this occasion. Orville withdrew $600 from the ATM, the same amount as the value of the amount packaged on the kitchen table. This is proof that defendant intended to exercise control over the entire amount on the table, which was going to go to Orville. The evidence at trial was enough to allow a reasonable jury to infer that defendant had power and intention to exert control over the cocaine on the kitchen table. As for effective assistance of counsel, all of defendant's contentions of error have to do with trial strategy, and they are more appropriately addressed in post-conviction proceedings. At this stage in the direct appeal, we are just guessing as to strategy. In a fourth district case in 2010 that concerned ineffective assistance of counsel for failure to tender an instruction limiting other crimes evidence, this Court said it would wait until the issue was pursued in post-conviction proceedings. As for the individual issues, defense counsel was not ineffective for failing to request a response be provided to the jury's request for a more detailed explanation of the instruction defining possession. The jury sent a note out saying, we would like a verbal description of this more detailed explanation. The jury did not say they were having difficulty with some words. The jury did not say they did not understand or were confused. And the parties agreed to the Court's suggested response. Please rely on the jury instructions, the witness's testimony, and the admitted exhibits. In addition to the argument already made that this is more appropriately addressed in post-conviction proceedings since it was a matter of trial strategy, counsel is arguing that defense counsel was not ineffective in this case. The instruction giving an accurately defined factual and constructive possession, a more detailed explanation to an already fairly detailed definition, would have involved the application of the definition to specific fact situations. Any more specific inquiry or commentary on application of this instruction to factual hypotheticals would have had the effect of commenting on the facts of the case. Defendant's suggestions in his brief regarding defining specific phrases would have just highlighted certain phrases in evidence over others and perhaps directed a verdict. Defense counsel employed reasonable trial strategy here, I'm just guessing, but perhaps counsel felt that as the jury was asking a question, they would not be able to reach a verdict. Perhaps counsel felt that if the Court further defined the terms in the definitions, it may inexplicably direct a verdict or point out some truths that were not evident to the jury, such as defendant being in plain view of the drugs. Moreover, the evidence, as I already argued, was not particularly close factually, and the jury was otherwise properly instructed, so I don't believe defendant has shown prejudice. As for whether defense counsel was ineffective for failing to cross-examine Orville about his bias where he was not charged with a crime, perhaps because he agreed to testify against defendant. Defendant is admitting that this issue hinges on speculation. Perhaps he was not charged. There is no evidence in the record that perhaps he was not charged because he agreed to testify. So this whole issue hinges on speculation. Also, defendant has not demonstrated there is a reasonable probability that the result of the trial would have been different had this questioning happened. The jury knew that Orville had bought drugs in the past and planned to buy drugs on this day. Additional credibility challenges would have been cumulative, and the jury had strong evidence of defendant's involvement in drugs apart from Orville's testimony, including his presence in plain view of the drugs, large package of drugs on the kitchen table, his cell phone next to the large drugs. As for whether defense counsel was ineffective for failing to object to or request an instruction limiting the jury's consideration of other crimes, what happened in this case is the prosecutor elicited in response to cross-examination, his question was, somebody you had a business arrangement in the past though, right? You've bought crack from him in the past, right? And Orville answers, a long time ago. Defense counsel was not ineffective for failing to object to this question because the evidence was admissible. He invited it by his cross-examination and trial strategy. He might have highlighted the testimony if he had objected. Also, he was not ineffective in failing to offer a limiting instruction because of trial strategy. A limiting instruction would have highlighted or emphasized this testimony, and the emphasis in the question, you've bought implicated Orville in the crimes, not defendant. So to instruct on other crimes would have emphasized the fact the defendant had committed this very same crime in the past. As for defense counsel failing to object to the investigator's testimony explaining that police reports indicated that Orville's girlfriend told police they intended to purchase cocaine, I think this argument rests on a subtlety that was probably not even noticed by the jury. Laird said the police report said they were there to buy cocaine from defendant. Laird did not testify that Luann was there to buy cocaine from defendant. An objection in this case may have highlighted Laird's testimony, and so it was reasonable trial strategy not to make the objection, and likewise a limiting instruction would have also emphasized it. Are there any other questions? I don't see any at this time. We'd ask the court to affirm. Thank you. Thank you. Any rebuttal, counsel? Justice Holder-White, you asked about the layout of the apartment. This is the schematic that was in the record, the one that you referenced. I just want to point out this is the only table that's referenced on that schematic, and so when I was discussing the layout of the apartment, the police say that they saw the defendants run towards a stairwell somewhere around the kitchen. This is the only stairwell around the kitchen that I'm aware of. It's half apartment away from where the drugs were allegedly found, if this was the only table that was in the residence and the drugs were found on the table. So the defendant at the time that the police executed the search warrant was not in the same immediate vicinity of this table. He was in a completely separate room at the time. Hold that up again and show me what your position is. So I see the table. So the table is here. Right. The testimony indicates that the defendants were here sometime right around when the police breached the door. What's the distance? I'm sorry? What's the distance? That it doesn't say on the schematic. And the drugs were on that table. And the drugs were supposedly on the table. You're saying that's where the basement door is? Yes, that's my understanding. Now, another kind of important subtlety about this case is the officers who initially went into the residence and secured the defendant, the defendant and Miranda's, didn't initially see the drugs on the table. If it's a large amount of drugs that the officer is walking right by on the table, and I point to the state because they referenced it as a large amount of drugs, I would expect the police officer to see that. The fact that the officer didn't see that leads me to believe that maybe the drugs weren't in as plain sight as the state would like this court to believe. Turning to the... Do you remember, and I don't remember who testified to it because we have testimony of different officers, but they talk about someone running toward the rear of the residence when they enter, and that's what threw me off because they came in in the rear, right? That's my understanding as well, yes. And there were only two people in the house. Correct. Okay. Turning briefly to the ineffective assistance of counsel argument, the state would like to chalk all of these errors up to trial strategy, saying that defense counsel didn't want to object to these things because it would draw the jury's attention to it. I have a fundamental problem with that position. That problem is in Illinois, we assume that a jury follows the instructions that they're given.  Right. We presume that the jury follows that limiting instruction. So if... We don't presume that. That doesn't mean that the trial attorney necessarily presumes that, does it? Well, it's not, but that is Illinois law, that we presume that the... That may be true. When we're talking about trial strategy, you're talking about the knowledge and experience of a trial attorney recognizing what juries may or may not take into consideration, true? Yes, to a certain extent, I would completely agree with that, yes. And it's not that much of a stretch of the imagination, is it, to believe that an experienced trial counsel will recognize that I don't care what Illinois law is, I understand what juries do and what they don't do and what they listen to and what they don't listen to and make decisions accordingly. I can accept that to a certain extent. And the part where you kind of lose me on that line is we also have the principle that effective assistance of counsel requires the attorney to engage evidentiary rules to shield his client from a decision based on unreliable evidence. And here we have counsel not using an evidentiary rule, not using the rule that the court can limit the jury's consideration of evidence. He didn't do that. And instead, when you're looking at the give and take of things, what is more dangerous here? I think it's more dangerous to allow in testimony that your client's a drug dealer, that sold drugs in the past when he's being prosecuted essentially for a drug deal. I think it's more prejudicial to allow in testimony, hearsay testimony, of another witness that the jury hasn't heard from yet when that witness is saying, I was there to buy drugs too, or I know that James was there to buy drugs. I'm sorry. And all of this supposition is probably why we say these are the issues best addressed in post-conviction petitions where they can be clearly brought out through affidavit, testimony, or otherwise. To a certain extent, again, the point that I struggle with that here is, I can't think of a valid trial strategy for counsel to allow these things in given the damaging effect. This isn't a piece of hearsay that defense counsel is allowing in that will have no bearing on the case. This is you permitting the jury to hear that your client is a drug dealer. But you're asking for, you're saying we needed a limiting instruction, so you're not saying that the jury wasn't going to hear it, but you believe they should have been instructed as to how to consider it. And so to Justice DeArmond's point, the jury's going to hear it, and then defense counsel has to make a determination, do I bring it up again, have the judge bring it up again, specifically in a limiting instruction. I see my time has expired. May I just respond to that one question? Yes. The answer to that is, have defense counsel object to the information coming in, so maybe it should have been kept out in the first place. But if there's a trial strategy to allow it in, it needs to be limited. Wasn't this on cross-examination? I'm sorry? Wasn't this on cross-examination? That I don't remember. So for those reasons, we'd ask that James's conviction be reversed, and the alternative that he be granted a new trial, and the alternative that the fines be stricken, as we suggested in the briefing. Thank you, counsel. We'll take this matter under advisement and be in recess.